**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JEFFREY L. HANES,** | : **CIVIL ACTION NO. 1:06-CV-0328** |
| | : |
| **Plaintiff** | : **(Judge Conner)** |
| **v.** | : |
| | : |
| **COLUMBIA GAS OF PENNSYLVANIA** | : |
| **NISOURCE COMPANY,** | : |
| | : |
| **Defendant** | : |

**<u>MEMORANDUM</u>**

This is an employment discrimination action filed by Jeffrey L. Hanes

("Hanes") against his employer, Columbia Gas of Pennsylvania ("Columbia Gas").[1]

Hanes, who is an African-American male, alleges that Columbia Gas discriminated

against him on the basis of his gender and race.  Presently before the court is

defendant's motion for summary judgment (Doc. 38).  For the reasons that follow,

the motion will be granted in part and denied in part.

**I.    <u>Statement of Facts</u>**[2]

Hanes began his employment with Columbia Gas on May 8, 1989 as a laborer

in the plant department in the company's York, Pennsylvania facility.  (Doc. 40 ¶ 5;

Doc. 45 ¶ 5.)  All non-supervisory employees at Columbia Gas are represented by

---

[1]  While the caption of this action refers to the defendant as "Columbia Gas of
Pennsylvania Nisource Company," Columbia Gas of Pennsylvania is actually a
wholly-owned subsidiary of Nisource, Inc.  (Doc. 40 ¶ 4; Doc. 45 ¶ 4.)

[2]  In accordance with the standard of review for a motion for summary
judgment, the court will present the facts in the light most favorable to Hanes.  <u>See</u>
<u>infra</u> Part II.

the United Steelworkers union.  (Doc. 40 ¶ 9; Doc. 45 ¶ 9.)  All unionized positions are subject to a bidding process.  Pursuant to this process, each available position is posted on a union bulletin board.  Interested applicants submit a bid, and the position is awarded to the qualified individual with the most seniority.  (Doc. 40, Ex. E at 33-35.)  On February 4, 2001, Hanes bid on and was awarded a Customer Service B position in the customer service department.  (Doc. 40 ¶ 10; Doc. 45 ¶ 10.) At the time, he was the only African-American male in the department.  (Doc. 40, Ex. S at 10.)

A collective bargaining agreement between Columbia Gas and the union dated June 15, 1982 purports to apply to all customer service department employees.[3]  (Id., Ex. G.)  The agreement establishes three classifications of customer service department employees, namely, Customer Service B, Customer Service A, and Customer Service Senior.  Customer Service B is described as an "entry level job for the service department."  (Id. at 1.)  According to the agreement, all employees entering the service department are "required to remain in this classification for a period of two (2) years and then must progress to Customer Service A through demonstrating their proficiency by passing a qualification test." (Id.)  Should an employee fail the first qualification test, "the employee will be given

_____

[3]  The agreement states that "[i]t is understood that the above conditions will be applicable during the term of the present labor agreement which expires 12:01 a.m. August 20, 1983."  (Doc. 40, Ex. G at 4.)  Despite this language, representatives of both Columbia Gas and the union testified that the agreement is still in effect because "both parties agreed that it would continue."  (Doc. 40, Ex. E at 57; Doc. 40 ¶ 12; Doc. 45 ¶ 12.)

the time to continue in the B classification for an additional six (6) month period and would then be given the opportunity to be retested."[4]  (Id. at 1-2.)  If an employee fails the second qualification test, "the employee would be required to move out of the Service Department to an available position to which his experience, training and seniority would entitle him under the labor agreement." (Id. at 2.)

Hanes finished numerous training courses before unsuccessfully completing the first qualification test on April 24, 2003.  (Doc. 40 ¶¶ 17, 20; Doc. 45 ¶¶ 17, 30.) When Hanes took the examination, he had not yet received a basic electricity course that was a required component of his training.  (Doc. 40 ¶ 18; Doc. 45 ¶ 18.) Hanes alleges that he advised the individual responsible for his training, Mike Breighner ("Breighner"), of this deficiency but was still compelled to take the test. (Doc. 40, Ex. S at 217.)  After Hanes' initial failure, his immediate supervisor, Charles M. Zambito ("Zambito"), and Operations Center Manager Ronald H. Blymire ("Blymire") attempted to schedule the basic electricity course for him. Their efforts to do so were allegedly delayed because of scheduling problems, the relocation of the company's York office, and the need for updated course materials. (See Doc. 40 ¶¶ 6-7, 19; Doc. 45 ¶¶ 6-7, 19; Doc. 40, Ex. C at 101-02.)  In the interim, Hanes completed a variety of additional training courses.  Ultimately, Hanes

---

[4]  Senior Human Resources Consultant Ronald L. Pryor ("Pryor") testified that an individual must "retake the test within six months" of the initial failure. (Doc. 40, Ex. E at 47-48; Doc. 40 ¶ 8; Doc. 45 ¶ 8.)

completed the basic electricity course on May 4, 2004.  (Doc. 40 ¶ 20; Doc. 45 ¶ 20.)

Hanes failed the qualification test for a second time on May 5, 2004.  (Doc. 40 ¶¶ 20-

21; Doc. 45 ¶¶ 20-21.)

After Hanes' two failures of the qualification test, Columbia Gas

representatives discovered that Hanes had not been "provided the training needed"

before taking the examination for the first time.  (Doc. 40, Ex. N.)  Accordingly, on

May 11, 2004, the company extended Hanes a written offer to take the qualification

test a third time.  (Doc. 40 ¶ 22; Doc. 45 ¶ 22.)  According to the terms of the offer,

the company agreed to provide Hanes with:  (1) classroom training "in the areas of

room combustion and venting and orifice sizing," (2) "'on the job' training . . .

through a 'ride along' program with a qualified Service Tech Sr.," and (3) "the

opportunity to retake the test during the week of June 28, 2004."  (Doc. 40, Ex. J.)

On May 17, 2004, Hanes filed two grievances numbered 259 and 260 and rejected

the company's offer of May 11, 2004.  (Doc. 40 ¶ 23; Doc. 45 ¶ 23.)  Hanes alleges that

he rejected only that portion of the company's offer that would have required him

to take the third test during the week of June 28, 2004.  Instead, he sought an

additional six months for the retest.  (Doc. 45 ¶ 23; Doc. 40, Ex. S at 145.)  After

rejecting the company's offer, Hanes was transferred to the meter reading

department effective May 16, 2004[5] "pending the outcome of Grievances #259 and

#260."  (Doc. 40, Ex. K.)  The offer of additional training and a third examination

---

[5] Although the transfer was effective May 16, 2004, Hanes' pay rate was not
reduced until June 27, 2004.  (Doc. 40 ¶ 26; Doc. 45 ¶ 26.)

was held "in abeyance" also pending the results of Hanes' grievances. (Id.) Pryor

informed Hanes in writing that his "decision to grieve [the May 11, 2004] offer left

the Company no choice but to notify [him] that the offer would be held in abeyance

until the grievances are settled." (Id., Ex. N.) Zambito further explained that

Hanes' demotion was not motivated by the grievances but rather by a need to

comply with the collective bargaining agreement's mandate that an employee be

removed from the service department after two examination failures. (Id., Ex. C at

127-28, 133.) Pryor further explained that the company could have faced liability

issues if it had continued to allow Hanes to perform service department duties

without a successful test result. (Id., Ex. E at 107.) On May 25, 2004, Hanes filed

grievance number 261 disputing the company's decision to hold its training and

testing offer in abeyance. (Id., Ex. C at 153-54; Ex. D at 144-45; Ex. E at 117.)

Through the grievance process, Hanes disputed the company's decision to

place him in the meter reader department rather than in the street service division

of the plant department. However, the company responded by informing Hanes

that "no street service position [was] currently vacant within the budgeted York

complement" and that he had been "placed into an available position for which he

[was] qualified" as required by the collective bargaining agreement between the

company and the union. (Id., Ex. S at 72-73; see also id., Ex. E at 96.)

When Hanes began his position in the meter reader department, he was

subject to certain performance quotas. Specifically, he was required to read 75% of

all inside meters and 99% of all outside meters with an error rate of less than 1.5 per 1000 meter reads.  (See id., Ex. N.)

On July 13, 2004, Hanes attempted to rebid the position of Customer Service B but was told that he was not permitted to do so because he had twice failed the examination.  (Id., Ex. S at 158, 197.)  Hanes filed grievance number 268 in response to the company's denial of his attempt to rebid.  (Id. at 160-61.)

On August 6, 2004, Columbia Gas modified its retesting offer of May 11, 2004 to provide Hanes with:  (1) classroom training "in the areas of room combustion and venting *(National Fuel Gas Code)* and orifice sizing *on Tuesday, August 10, 2004 – Thursday, August 12, 2004*," (2) "'on the job' training . . . through a 'ride along' program with a qualified Service Tech Sr.," and (3) "the opportunity to retake the test *at a mutually agreeable time, but not to exceed 6 months from the completion of [his] training*."  (Id., Ex. P (emphasis added to denote differences from original offer)).  On August 8, 2004, Hanes was returned to his previous position of Customer Service B.  (Doc. 40 ¶ 27; Doc. 45 ¶ 27.)  Hanes was compensated for the difference in pay between the meter reading and Customer Service B positions for the time period between his decrease in pay on June 27, 2004 and his reinstatement on

August 8, 2004.[6]  (Doc. 40 ¶ 28; Doc. 45 ¶ 28.)  On February 3, 2005, Hanes

successfully completed the qualification test and was promoted to Customer

Service A.  (Doc. 40 ¶ 29; Doc. 45 ¶ 29.)

On February 13, 2006, Hanes initiated the instant action, alleging that

Columbia Gas discriminated against him on the basis of his race and gender in

violation of:  (1) Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e-2(a),

(2) 42 U.S.C. § 1981 ("§ 1981"), and (3) the City of York Human Relations Ordinance,

YORK, PA., CODIFIED ORDINANCES art. 185 (2006).[7]  (See Doc. 1.)  Initially, Columbia

Gas elected not to engage in dispositive motions practice with respect to the claims

asserted against it.  The case proceeded to pretrial conference on August 23, 2007,

at which time Columbia Gas informed the court of several potentially dispositive

issues that could obviate the need for a jury trial.[8]  (See Doc. 35.)  In hopes of

---

[6]  Hanes alleges that he was not fully compensated by the company for his time as a meter reader because he was not paid for missed overtime opportunities. (Doc. 40, Ex. S at 76.)  As the result of a grievance, he was given the opportunity to make up four hours of missed overtime but he refused to do so because he believed he was entitled to more.  (Id. at 154; see also Doc. 48, Ex. 19 (calculating Hanes' potential loss of overtime by multiplying the number of overtime hours available by the percentage of overtime hours historically offered to Hanes and by Hanes' historical overtime acceptance rate)).

[7]  Hanes initially asserted several claims pursuant to 42 U.S.C. § 1983 but has since conceded that such claims must fail because Columbia Gas is not a state actor for purposes of § 1983.  (See Doc. 38 ¶¶ 26-27; Doc. 46 ¶¶ 26-27.)

[8]  Specifically, those issues were:  (1) whether all of the claims asserted in the instant action had been fully exhausted, (2) whether the plaintiff had met his burden of proof for a § 1981 claim, and (3) the propriety of punitive damages.  (See Doc. 35 at 21, 37, 54.)

conserving judicial resources, the court elected to hold the trial schedule in abeyance and permit Columbia Gas to file a motion for summary judgment addressing all potentially dispositive issues.  (See Doc. 34.)  The instant motion resulted.  (See Doc. 38.)  In the motion, Columbia Gas asserts that each of Hanes' claims must fail for lack of evidence of pretext.[9]  (See id.; see also Doc. 41.)  The motion has been fully briefed and is ripe for disposition.

## II.   __Standard of Review__

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact," and for which a jury trial would be an empty and unnecessary formality.  See FED. R. CIV. P. 56(c).  It places the burden on the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief.  Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see

---

[9]  The court notes that the instant motion addresses issues that were not contemplated by the parties or the court during the initial pretrial conference.  (See Doc. 35 at 21, 37, 54.)  In the spirit of conservation of judicial resources, the court prefers to address these issues in the context of the instant motion rather than as a motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50 during the course of a trial.  Nevertheless, defense counsel is admonished that his motions practice in the instant case is unorthodox and that stricter scrutiny shall apply in the future.

<u>also</u> Fed. R. Civ. P. 56(c), (e).  Only if this threshold is met may the cause of action

proceed.  <u>Pappas</u>, 331 F. Supp. 2d at 315.

## III.   <u>Discussion</u>

Hanes alleges that Columbia Gas discriminated against him on the basis of

gender and race.  Specifically, Hanes alleges that he was subjected to disparate

treatment and retaliation.[10]  The court will address these claims *seriatim*, before

discussing defendant's claims regarding certain categories of damages sought by

Hanes.

### A.   <u>Disparate Treatment</u>

Hanes alleges that he was subjected to disparate treatment in training,

evaluation, and promotional decisions because of his race and gender.[11]  To

---

[10]  While the allegations of Hanes' complaint are not the picture of clarity, Hanes now concedes that he did not intend the instant action to assert a disparate impact claim.  (Doc. 40 ¶ 32; Doc. 45 ¶ 32.)

[11]  Race and gender discrimination are proscribed by Title VII, which provides, in pertinent part, as follows:

> It shall be an unlawful employment practice for an employer --
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's *race,* color, religion, *sex*, or national origin; or
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's *race*, color, religion, *sex*, or national origin.

42 U.S.C. § 2000-e(2) (emphasis added).  Race discrimination is also proscribed by § 1981, and both statutes utilize the same analytical framework.  <u>See</u> <u>Lewis v.</u>

withstand a motion for summary judgment on a disparate treatment claim, a

plaintiff must establish that his or her "protected trait played a role in the

employer's decision-making process and had a determinative influence on the

outcome of that process."[12] <u>Ulitchney v. Potter</u>, No. 04-0991, 2006 WL 1722391, at *2

(M.D. Pa. June 16, 2006) (quoting <u>Monaco v. Amer. Gen. Assurance. Co.</u>, 359 F.3d

296, 300 (3d Cir. 2004)).  A plaintiff may meet this burden with either direct

evidence, <u>see</u> <u>Price Waterhouse v. Hopkins</u>, 490 U.S. 288 (1989) (O'Connor, J.,

---

<u>University of Pittsburgh</u>, 725 F.2d 910, 920 (1983) ("Employment discrimination
claims brought under 42 U.S.C. § 1981 are governed by the same standards as
actions brought pursuant to the disparate treatment strand of Title VII."); <u>see also</u>
<u>Lassiter v. Children's Hosp. of Phila.</u>, No. 05-6834, 2008 WL 304891, at *5 (E.D. Pa.
Jan. 31, 2008) ("Claims of indirect discrimination, including . . . disparate treatment,
are analyzed under the same McDonnell Douglas burden shifting analysis
described below, whether they are predicated on Title VII, § 1981, or the PHRA.").
Accordingly, the analysis that follows applies to both Title VII and § 1981 claims.

[12]  The United States Court of Appeals for the Third Circuit adheres to a
distinction between "pretext" cases, in which the employee asserts that the
employer's justification for an adverse action is false, and "mixed-motives" cases, in
which the employee asserts that both legitimate and illegitimate motivations played
a role in the action.  <u>See Watson v. Southeastern Pa. Transp. Auth.</u>, 207 F.3d 207,
214-15 & n.5 (3d Cir. 2000); <u>see also</u> <u>Desert Palace, Inc. v. Costa</u>, 539 U.S. 90, 94 n.1,
98-100 (2003) (stating that, in mixed-motive cases, plaintiff must show that
distinction was a "motivating factor" but declining to address whether similar
standard applies in pretext case).  The former requires evidence that discriminatory
animus was the "determinative factor" in the adverse action; the latter requires
only that it was a "motivating factor" in the decision.  <u>Id.</u>  Plaintiff does not identify
the theory under which he is proceeding.  However, it is unnecessary for the court
to resolve the precise nature of plaintiff's claims since he cannot meet the less
rigorous "motivating factor" analysis.  <u>Cf.</u> <u>Dunbar v. Pepsi-Cola Gen. Bottlers of
Iowa, Inc.</u>, 285 F. Supp. 2d 1180, 1190-98 (N. D. Iowa 2003) (holding that proof that
discriminatory animus was a "motivating factor" is sufficient in both pretext and
mixed-motives cases).  <u>See generally</u> Mark P.A. Hudson, <u>McDonnell Douglas:  Alive
and Well</u>, 52 DRAKE L. REV. 383 (2004) (discussing <u>Costa</u> and <u>McDonnell Douglas</u>).

concurring), or circumstantial evidence, see McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  In the instant case, Hanes has not provided direct evidence of discrimination;[13] therefore, the court will examine his claims using the three step burden-shifting analysis set forth in McDonnell Douglas.

Under McDonnell Douglas, a plaintiff must first establish a prima facie case of discrimination by proving the following elements:  (1) the plaintiff is a member of a protected class,[14] (2) the plaintiff was qualified for the position he held or sought, (3) the plaintiff suffered an adverse employment action, and (4) the circumstances of the adverse employment action give rise to an inference of discrimination.  Johnson v. Keebler-Sunshine Biscuits, Inc., 214 F. App'x 239, 241-42 (3d Cir. 2007); Connors v. Chrysler Fin. Corp., 160 F.3d 971, 974 (3d Cir. 1998).  Once the *prima facie* case is

---

[13] Direct evidence is "evidence that proves an ultimate fact in the case without any process of inference." Woodson v. Scott Paper Co., 109 F.3d 913, 930 (3d Cir. 1997).  An employer who discriminates "will almost never announce a discriminatory animus or provide employees or courts with direct evidence of discriminatory intent." Iadimarco v. Runyon, 190 F.3d 151, 157 (3d Cir. 1999).  Therefore, a plaintiff who wishes to establish a prima facie case of discrimination using direct evidence "faces a high hurdle." Connors v. Chrysler Fin. Corp., 160 F.3d 971, 976 (3d Cir. 1998).  The court carefully examined the record and found no evidence to suggest that Hanes has cleared this hurdle in the instant action.  To the contrary, Hanes admits that he has never heard anyone from Columbia Gas make disparaging remarks on the basis of race or gender, that he has never seen any Columbia Gas documents containing racist or sexist remarks, and that he is unaware of any unwritten policy on the part of Columbia Gas to treat people differently on the basis of their race or gender.  (Doc. 40, Ex. S at 18, 35-36, 110, 173-75.)

[14] The protected class element has been extended to reach cases of "reverse discrimination," wherein a member of a majority group alleges that he or she was discriminated against in favor of a member of a minority group.  Iadimarco, 190 F.3d at 158.  Hanes' claim of gender discrimination falls into this category.

established, the burden shifts to the defendant to articulate some "legitimate, nondiscriminatory reason" for the plaintiff's treatment.  <u>Iadimarco v. Runyon</u>, 190 F.3d 151, 157 (3d Cir. 1999) (citing <u>McDonnell Douglas</u>, 411 U.S. at 802); <u>Keller v. Orix Credit Alliance, Inc.</u>, 130 F.3d 1101, 1108 (3d Cir. 1997).  The defendant's burden to prove a legitimate non-discriminatory reason is "relatively light."  <u>Johnson</u>, 214 F. App'x at 242-43.  The defendant is only required to prove that its actions could have been motivated by the proffered legitimate, nondiscriminatory reason; proof of actual causation is not required.  <u>Iadimarco</u>, 190 F.3d at 157.  Once the defendant has met its burden, the plaintiff must "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant are merely a pretext for discrimination."  <u>Johnson</u>, 214 F. App'x at 241-42.  The plaintiff may meet this burden by presenting evidence from which a reasonable factfinder could "either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."  <u>Keller</u>, 130 F.3d at 1108.

In the action *sub judice*, Columbia Gas appears to concede for purposes of the instant motion that Hanes has established a prima facie case of race and gender discrimination.  (<u>See</u> Doc. 41 at 10 (arguing only the Hanes cannot prove pretext)).  Accordingly, the court must consider whether Columbia Gas has proffered "legitimate, nondiscriminatory reasons" for Hanes' treatment.  <u>Iadimarco</u>, 190 F.3d at 157.  The court finds that Columbia Gas has met its relatively light burden to proffer a legitimate reason for its actions.  <u>See Rabinowitz v. AmeriGas Partners</u>,

L.P., 252 F. App'x 524, 528 (3d Cir. 2007) ("The employer need not prove that the tendered reason actually motivated its behavior, as throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff."). Columbia Gas asserts that any deficiencies in Hanes' training were inadvertent and resulted from scheduling difficulties and changes in training modules. Furthermore, Columbia Gas posits that the aftereffects of Hanes' failure of the Customer Service A test were motivated by the company's desire to comply with the terms of the collective bargaining agreement, rather than by any animus toward Hanes. Finally, Columbia Gas asserts that Hanes was subjected to quotas following his demotion not because of animus but because quotas were a standard requirement in the meter reading department. (See Doc. 41 at 11-14.) The court finds that, *in toto*, these assertions provide legitimate explanations for Hanes' treatment by Columbia Gas at all times relevant to this lawsuit.

Having found that Columbia Gas has proffered a legitimate, nondiscriminatory reason for its actions, the court must consider whether Hanes has rebutted this proffer with evidence of pretext. To prove pretext, a plaintiff must adduce evidence sufficient to "allow a factfinder reasonably to infer that each of the employer's proffered non-discriminatory reasons was either a post hoc fabrication or otherwise did not actually motivate the employment action." Rabinowitz, 252 F. App'x at 527. To do so, the plaintiff must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reason for its action that a reasonable factfinder could

rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." Id. It is not sufficient for the plaintiff "to show that the employer's decision was wrong, mistaken, imprudent or incompetently made." Id.

As evidence that the actions of Columbia Gas were a pretext for gender discrimination, Hanes offers the following: (1) his vacated position was filled by a female, (2) he was forced to complete nonmandatory overtime that should have been assigned to a female employee who had less seniority, (3) a female employee was trained adequately at around the same time that he received inadequate training, (4) he was passed over for an overtime opportunity in favor of a female employee, (5) a female employee was permitted to enter the service department without bidding, and (6) no female meter readers were subjected to quotas. (Doc. 40, Ex. S at 80, 89, 113, 150-52, 163.) The court finds that Hanes' allegations amount to little more than the convergence of unrelated circumstances that are insufficient to establish pretext. The mere fact that female employees occasionally experienced positive employment actions shortly after Hanes experienced negative ones does not prove a causal relationship between Hanes' negative experiences and gender-based animus. See Kothe v. Cont'l Teves, Inc., 461 F. Supp. 2d 466, 477 (W.D. Va. 2006) ("Courts considering the pretext requirement in other contexts have also found coincidences of timing to be insufficient to establish pretext."); cf. Quiroga v. Hasbro, Inc., 934 F.2d 497, 501 (3d Cir. 1991) (stating, in the context of a Title VII retaliation claim, that "an inference based upon timing alone" is

14

insufficient to suggest discriminatory motives).  Moreover, Hanes' attempt to prove

pretext is greatly undermined by the fact that the individuals who rendered the

allegedly discriminatory decisions were members of Hanes' protected class.  Hanes'

immediate supervisor, his trainer, and all others specifically referenced as

supervisors in Hanes' complaint are male.  See, e.g., Sherrod v. Booker T.

Washington, No. 04-208, 2006 WL 2707317, at *7 (W.D. Pa. Sept. 19, 2006) (holding

no inference of discrimination arose where individual who made allegedly racist

comments was member "of the same protected class as plaintiff");

Rajbahadoorsingh v. Chase Manhattan Bank, NA, 168 F. Supp. 2d 496, 502 (D.V.I.

2001) (finding that, where plaintiff and decision-maker were of same race, "it is

hard to fathom how [decision-maker's] statements could be construed to show that

[plaintiff's] termination was racially motivated"); Dungee v. N.E. Foods, Inc., 940 F.

Supp. 682, 688 n.3 (D.N.J. 1996) (finding that decision-maker's membership in

plaintiff's protected class "weakens any compelling evidence of age

discrimination").  It simply defies logic to believe that a group of all-male decision-

makers would engage in a protracted campaign of discrimination against Hanes on

the basis of his gender.  Moreover, the tenuous factual similarities between the

treatment of certain female employees and the treatment of Hanes are woefully

insufficient to establish pretext.  For example, the female employee who allegedly

entered the service department without bidding was part of a Columbia Gas

program to create a "multi-skilled" workforce.  To that end, she was permitted to

maintain her position in the plant department while training in the service

department.  (Doc. 40, Ex. C at 87-89; Doc. 48, Ex. 1 at 9.)  Hanes has not alleged that

he was simultaneously performing job responsibilities for two departments;

therefore, his situation is not factually analogous to that of the above-referenced

female employee.  While the court can envision limited situations in which a

decision-maker may be motivated to make hiring decisions that disadvantage a

member of his or her protected class, this situation is not implicated by the facts of

the instant case.  Accordingly, the court will grant Columbia Gas's motion for

summary judgment with respect to Hanes' claims of disparate treatment on the

basis of gender.

As evidence that the actions of Columbia Gas were pretext for race

discrimination, Hanes offers the following facts:  (1) he was the only African-

American in a service department composed of eighteen to twenty individuals,

(2) he was given the first Customer Service A test without proper training,[15] (3) he

was given only one day between the completion of his training and his second test,

(4) despite the company's knowledge that he was improperly trained for the first

test, he was prohibited from taking the test a third time, (5) he was demoted to

meter reader rather than to the plant department, (6) following his demotion, his

vacated position was filled by a Caucasian employee, (7) only African-American

---

[15]  Hanes alleges that Sandra Ness, a Caucasian female employee, was fully
trained at around the same time that he was improperly trained.  (Doc. 40, Ex. S at
80, 89.)  Moreover, David Orr, an African-American male member of the customer
service department, stated in a sworn affidavit that Columbia Gas also failed to
provide him with the required training for promotion from Customer Service B to
Customer Service A.  (Doc. 48, Ex. 3 ¶¶ 9-12.)

employees have ever failed the Customer Service A test twice, (8) both Hanes and

an African-American female employee were prevented from re-bidding a Customer

Service B position subsequent to their demotions, and (9) a Caucasian female

employee was permitted to circumvent the bidding process for a Customer Service

B position.  (Doc. 40, Ex. S at 10-11, 15, 30-31, 46-47, 62, 72-73, 80, 93-94, 102-03, 131-

33, 242.)  Hanes also points to a number of ways in which he was treated differently

than similarly situated Caucasian co-workers in the service department.  For

example, Hanes testified that, at various times, he was subjected to shift changes,

forced to complete nonmandatory overtime,[16] and bypassed for overtime

opportunities.[17]  He also alleges that he was the only meter reader who was required

to meet certain quotas and that he was threatened with discipline when he did not

meet these quotas.  (Id. at 92-94, 97, 121, 167, 223.)[18]  Finally, Hanes proffers the

--------

[16] Columbia Gas utilizes an overtime system whereby nonmandatory overtime is offered to employees on a voluntary basis beginning with the employee who has worked the least amount of overtime.  If no one volunteers for the assignment, the qualified individual with the least seniority is required to complete the overtime.  (Doc. 40, Ex. D at 57-58.)  Hanes alleges that he was assigned nonmandatory overtime when a Caucasian female co-worker was less senior than he was.  (Id., Ex. S at 93, 95, 111-12.)

[17] The missed overtime opportunities occurred while Hanes was a meter reader.  A Caucasian female employee with less seniority was given the overtime assignment while Hanes was not.  (Doc. 40, Ex. S at 150-52.)  Ultimately, the company agreed to permit Hanes to makeup four hours of missed overtime, but he rejected the offer.  (Id. at 154.)

[18] Hanes' deposition testimony also touches tangentially on several incidents that form the basis of a second lawsuit that he later filed against Columbia Gas and three of its employees.  See Hanes v. Columbia Gas, No. 07-1706 (M.D. Pa. 2007).  The court will dispose of these issues in the context of that second lawsuit.

sworn affidavits of several Columbia Gas employees who confirm that there is a history of discriminatory treatment of African-Americans in the York, Pennsylvania office. (Doc. 48, Exs. 3-4, 11.)

Viewing this evidence as a whole and in the light most favorable to Hanes, the court finds that it is sufficient to establish pretext in the restricted posture of a motion for summary judgment. By contrasting Hanes' treatment with that of similarly-situated Caucasian employees, such as Sandra Ness and Bobbi Wherley, a reasonable jury could conclude that Hanes was subjected to adverse employment actions on the basis of his race. The racial composition of the service department, the fact that both Hanes and another African-American individual were improperly trained for the Customer Service A test, and the evidence that only African-American employees have ever failed the qualifying examination would all lend credence to this conclusion. Moreover, the company's decision to prevent Hanes and another African-American employee from rebidding their previous positions after their demotions could be interpreted by a jury as potentially suspect.

When confronted with similar facts, the United States Court of Appeals for the Eleventh Circuit held that a plaintiff had provided sufficient evidence of pretext to reach the jury. In <u>Sledge v. Goodyear Dunlop Tires N. Am., Ltd.</u>, 275 F.3d 1014 (11th Cir. 2001), the plaintiff, an African-American male, alleged that his employer refused to promote him because of his race. <u>Id.</u> at 1015. As in the instant case, a collective bargaining agreement required individuals to bid on open positions that were posted on the union bulletin board. Also as here, the employer utilized an

examination to facilitate its promotion decisions.  The plaintiff was required to take a more comprehensive examination than the one that had been administered to Caucasian applicants.  The plaintiff failed the examination, but learned that he would have passed had he been given the same test as the Caucasian applicants. Thereafter, the plaintiff repeatedly bid on positions but was not promoted because of his failing test score.  All of the positions were filled by Caucasians, some of whom had not been tested and others of whom had failed the examination.  At the time, only one out of 107 employees in the position the plaintiff sought was African-American.  Id. at 1016-17.  The court held that the written examination was "nothing more than a pretext for racial discrimination."  Id. at 1019.  The court's holding was premised upon the overwhelmingly Caucasian composition of the employer's workforce, the sporadic use of the examination, and the company's decision to promote several Caucasian individuals who had either not taken or had failed the examination.  Id. at 1019-20.

The court finds that the facts of the instant case do not paint as clear a picture of racial discrimination as do the facts of Sledge.  However, relying upon the Eleventh Circuit's reasoning, the court finds that a reasonable jury could determine that Hanes has met his burden to establish pretext.  The evidence suggests that, as did the employer in Sledge, Columbia Gas purportedly provided Hanes and other African-Americans with less desirable training and testing circumstances than those provided to Caucasian employees.  Further, Hanes suggests that at least one Caucasian employee was permitted to circumvent the bidding process, which the

court finds analogous to the decision of the employer in <u>Sledge</u> to permit Caucasian employees to evade the examination requirement.  Based on the foregoing, the court concludes that Hanes has presented sufficient evidence to reach the jury on his race-based disparate treatment claim, and the court will deny the motion for summary judgment with respect to this claim.

### B.   <u>Retaliation</u>[19]

To state a *prima facie* case of retaliation, a plaintiff must allege that:  (1) he or she engaged in a protected activity, (2) the employer subjected him or her to an adverse employment action, and (3) "a causal link exists between the protected activity and the adverse action."  <u>Weston v. Pennsylvania</u>, 251 F.3d 420, 430 (3d Cir. 2001); <u>see also</u> <u>Aguiar v. Morgan Corp.</u>, 27 F. App'x 110, 112 (3d Cir. 2002); <u>Glenn v. Horgan Bros., Inc.</u>, No. 03-6578, 2005 WL 1503428, at *2 (E.D. Pa. June 24, 2005).  If a plaintiff establishes a *prima facie* case of retaliation, <u>McDonnell Douglas</u> burden-shifting applies:  "'[T]he burden shifts to the employer to advance a legitimate, non-retaliatory reason for its adverse employment action.'  If the employer satisfies that burden, the plaintiff must then prove that 'retaliatory animus played a role in the employer's decisionmaking process and that it had a determinative effect on the

---

[19]  The Third Circuit has held that the anti-retaliation provisions of Title VII and § 1981 are "governed by the same set of precedents."  <u>Fogleman v. Mercy Hosp., Inc.</u>, 283 F.3d 561, 567-68 (3d Cir. 2002); <u>Schurr v. Resorts Int'l Hotel, Inc.</u>, 196 F.3d 486, 499 (3d Cir. 1999).  Accordingly, the court will evaluate both of Hanes' retaliation claims according to the principles set forth below.

outcome of that process.'"  <u>Shellenberger v. Summit Bancorp., Inc.</u>, 318 F.3d 183,

187 (3d Cir. 2003) (citing <u>McDonnell Douglas</u>, 411 U.S. 792).

In the instant case, Hanes alleges that he engaged in a protected activity

when he filed numerous grievances and that Columbia Gas subjected him to the

retaliatory actions of demoting him to meter reader and subjecting him to quotas as

a result.  (Doc. 40, Ex. S at 121, 132-33.)  Columbia Gas contends only that these acts

cannot be considered retaliatory because they were not motivated by an intent to

discriminate on the basis of race or gender.  (<u>See</u> Doc. 38 at 6.)  The court finds this

contention unavailing as Columbia Gas has conflated two distinct doctrines.  To

succeed on his retaliation claim, Hanes need not prove that the underlying actions

of Columbia Gas were *discriminatory*.  He need only prove that Columbia Gas

engaged in the underlying actions for the purpose of *retaliating* against him for

participating in a protected activity.  Moreover, given the court's finding that Hanes

has satisfied his burden to prove race discrimination at the summary judgment

stage, <u>see</u> <u>supra</u> Part III.A., the court cannot now reject Hanes' retaliation claim on

the basis that he has failed to establish discrimination.  Accordingly, the court will

deny the motion for summary judgment with respect to Hanes' retaliation claims.

C.     **State Law Claim**

Hanes asserts that the actions underlying his federal claims also give rise to a

violation of the York City Human Relations Ordinance.  Columbia Gas asks the

court to dismiss this claim as Hanes "has not introduced the Ordinance into the

record in this case and cannot show that the Defendant has violated any standards

set forth in the Ordinance." (Doc. 41 at 19.) The court notes that the ordinance is public record and, as such, need not be specifically introduced by Hanes. Sections 185.05 of the ordinance outlines unlawful discriminatory practices in employment and forbid employers from, *inter alia*, discriminating against employees in the terms and conditions of their employment on the basis of race or retaliating against employees for reporting unlawful discrimination. York, Pa., Human Relations Ordinance 185.05(a), (d) (Sept. 15, 1998). These prohibitions appear to overlap with the remaining federal claims asserted in this case. Columbia Gas has failed to make a concerted effort to mount a legal challenge to this claim aside from referencing the purported deficiencies with the federal claims. Because the court has previously rejected these arguments, see supra Parts III.A-III.B, the court will deny the motion for summary judgment with respect to this claim.

### D.   **Damages Limitations**

Columbia Gas asserts that Hanes improperly seeks monetary damages for his Title VII claim and that Hanes has failed to bolster his request for punitive damages with respect to any of his claims. The court will address these arguments *seriatim*.

### 1.   **Compensatory and Punitive Damages for Title VII Claims**

Defendant contends that even if Hanes succeeds on his Title VII claim, he cannot recover compensatory or punitive damages. (Doc. 38 at 9.) Title VII expressly authorizes "an award of backpay 'or any other equitable relief as the court deems appropriate.'" Protos v. Volkswagen of Am., Inc., 797 F.2d 129, 138 (3d Cir. 1986) (quoting 42 U.S.C. § 2000e-5(g)). Prior to the 1991 amendments to the

Civil Rights Act, the Third Circuit expressly held that punitive damages are not available pursuant to Title VII and that the "overwhelming weight of authority from other courts is that compensatory damages are not available under Title VII either." Id. However, the 1991 amendments added compensatory and punitive damages to the authorized remedies in Title VII cases of "unlawful intentional discrimination." 42 U.S.C. § 1981a. Such remedies are, however, only allowable where the plaintiff cannot recover pursuant to 42 U.S.C. § 1981. Id. This provision is intended to prevent the "double recovery of plaintiffs bringing claims under Title VII and § 1981." Jackson v. Local Union 542, Int'l Union of Operating Eng'rs, 155 F. Supp. 2d 332, 337 n.7 (E.D. Pa. 2001).

In the action *sub judice*, Hanes seeks recovery pursuant to Title VII and § 1981. However, Hanes is permitted to seek recovery in the alternative, and the court is not being called upon to address the relative merits of Hanes' alternative claims at this juncture. Therefore, any concerns regarding duplicative recovery must be dealt with during the trial stage of this litigation. Defendant's motion for summary judgment will be denied to the extent it asserts that Hanes cannot pursue compensatory or punitive damages pursuant to Title VII.

### 2. Punitive Damages for all Claims

Columbia Gas alleges that Hanes cannot recover punitive damages because he has failed to prove that Columbia Gas engaged in discrimination with "malice or reckless indifference." (See Doc. 38 at 10.) A plaintiff's entitlement to punitive damages hinges upon a subjective analysis of "the actor's state of mind" and

23

requires a thorough consideration of the evidence and testimony disclosed at trial.

See Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 535 (1999); EEOC v. Aldi, Inc., No. 06-

1210, 2008 WL 859249, at *19 n.30 (W.D. Pa. Mar. 28, 2008).  Having found that

Hanes has presented sufficient evidence for his race discrimination claims to

survive summary judgment, the court finds that the issue of punitive damages is

best reserved until the close of evidence at trial, at which time the court will revisit

the issue upon a proper motion by Columbia Gas.  See Harry v. City of Phila.,

No. 03-661, 2004 WL 1387319, at *16 n.24 (E.D. Pa. June 18, 2004) ("Since plaintiff's

claim for racial discrimination under Title VII will survive this motion for summary

judgment, so too will his claim for punitive damages based on such violation.");

Aldi, 2008 WL 859249, at *19 n.30.  The court will deny this portion of defendant's

motion for summary judgment.

## IV.   Conclusion

For the foregoing reasons, the court will grant defendant's motion for

summary judgment with respect to Hanes' claims of gender-based disparate

treatment and of 42 U.S.C. § 1983 violations.  The motion for summary judgment

will be otherwise denied.

An appropriate order will issue.


  S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge


Dated:      August 15, 2008

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JEFFREY L. HANES,** | : | **CIVIL ACTION NO. 1:06-CV-0328** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| **v.** | : | |
| | : | |
| **COLUMBIA GAS OF PENNSYLVANIA** | : | |
| **NISOURCE COMPANY,** | : | |
| | : | |
| **Defendant** | : | |

**ORDER**

AND NOW, this 15th day of August, 2008, upon consideration of the motion

for summary judgment (Doc. 38), filed by defendant Columbia Gas of Pennsylvania

Nisource Company, it is hereby ORDERED that the motion for summary judgment

(Doc. 38) is GRANTED in part and DENIED in part as follows:

1.     The motion (Doc. 38) is GRANTED with respect to:

    a.     All claims of disparate treatment on the basis of gender; and

    b.     All claims pursuant to 42 U.S.C. § 1983.

2.     The motion (Doc. 38) is otherwise DENIED.

3.     The Clerk of Court is directed to DEFER entry of judgment until the
conclusion of this case.

4.     A revised pretrial and trial schedule shall issue by future order of
court.

                                               _S/ Christopher C. Conner_
                                               CHRISTOPHER C. CONNER
                                               United States District Judge